# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **JESSE DREW GULLION,** | )<br>) |
| Plaintiff, | ) Case No. 1:12CV00056<br>) |
| v. | ) **OPINION**<br>) |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**[1] | ) By: James P. Jones<br>) United States District Judge<br>)<br>) |
| Defendant. | ) |

*Jesse Drew Gullion, Pro Se Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Lori Karimoto, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Jesse Drew Gullion filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

Security Act (the "Act"), 42 U.S.C.A. §§ 1381-83f (West 2012 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Gullion protectively applied for SSI on January 13, 2009, initially alleging disability beginning May 1, 2008, though he later amended his alleged onset date to January 13, 2009. His claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on November 6, 2009, at which Gullion, represented by counsel, and a vocational expert ("VE") testified. On February 25, 2011, the ALJ issued a decision finding that Gullion was not disabled under the Act. Gullion requested review by the Social Security Administration's Appeals Council. The Appeals Council denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner. Gullion then filed a complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Gullion was 42 years old on the date of the ALJ's decision. He has a high school diploma and has past relevant work as a screen printer.

Gullion claims disability based on hip and knee pain and emotional stress. In September 2007, during a domestic dispute, he was dragged by a car a short distance and suffered minor injuries; he was treated at the emergency room and released. (R. at 227-45.) A brain CT scan revealed some fluid collection, and the doctor thought an MRI might be beneficial. (R. at 234.) Gullion received inpatient mental health treatment in April 2008, at which time he was diagnosed with intermittent explosive disorder, personality disorder, and impulse control disorder and was assigned Global Assessment of Functioning ("GAF") scores of 32 and 41.[2] (R. at 247-78.) He showed significant improvement on Trileptal and was "quite stable after taking his medication." (R. at 249-50.)

In November 2008, Gullion returned for follow-up mental health treatment and reported that he was handling his relationship stress reasonably well, despite having separated from his wife and having a protective order against him. (R. at 279.) He denied any outbursts or explosive behavior and also denied any other medical problems. (R. at 279.) Marlon Anthony Graham, M.D., ruled out impulse control disorder and obsessive compulsive disorder, but diagnosed intermittent

---

[2] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social, occupational, or school functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

explosive disorder and personality disorder and assigned a GAF score of 45. (R. at 279-80.) Dr. Graham recommended counseling and continuing medication, as well as a brain MRI. (R. at 280.) In the coming months, Gullion described sadness and suspicion but continued to deny outbursts and explosive anger, and Dr. Graham noted that Gullion seemed to be doing much better. (R. at 282-82, 313.)

In late March 2009, Gullion's condition deteriorated when he learned his estranged wife was seeing another man. (R. at 314.) A counselor at Mount Rogers Community Services Board noted that Gullion was anxious and paranoid, and the counselor suspected Gullion had stopped taking his medications. (R. at 314.) In mid-April 2009, Gullion continued to obsess over getting his wife to return to him and would not listen to his counselor's advice. (R. at 311.) His psychiatrist started him on Zoloft. (R. at 312.)

William Humphries, M.D., examined Gullion at the state agency's request in May 2009, related to complaints of knee and hip pain. (R. at 287-90.) The examination was largely unremarkable, and Dr. Humphries opined that Gullion's only restriction would be a limitation of no more than occasional crawling. (*Id.*) In May 2009, Joseph Duckwall, M.D., a state agency physician, reviewed Gullion's record and opined that Gullion could perform medium work limited to only occasional crawling. (R. at 63-73.)

Gullion continued to attend counseling sessions from May through September 2009, but there was no change in his progress other than some minimal improvement in early September. (R. at 304-10.) Gullion reported doing well on September 9, 2009. (R. at 302.) Gullion visited Family Physicians of Marion in June 2009, but the records from this visit do not reveal much. (R. at 293-94.)

A state agency psychologist, Richard J. Milan, Jr., Ph.D., reviewed Gullion's file in October 2009 and concluded that Gullion's mental impairments would not prevent him from meeting the basic demands of competitive work. (R. at 85-86.) Donald Williams, M.D., another state agency physician, reviewed Gullion's file on the same day and opined that Gullion could lift 10 pounds frequently and 20 pounds occasionally; stand for four hours and sit for six hours in an eight-hour workday; could only occasionally push or pull foot controls due to knee pain; could frequently climb stairs, balance, and stoop; and could only occasionally climb ladders/ropes/scaffolds, kneel, crouch, and crawl due to his brain cyst and knee pain; but had no other physical limitations. (R. at 84-85.)

Gullion also sought treatment for an earache in July and September 2009. (R. at 317-21.)

Gullion testified that he lived alone and fully cared for himself, performed a number of household chores, cared for and played with his children, drove regularly, managed his own finances and schedule, and generally performed a

broad range of activities of daily living. He stated that he had stopped working for reasons related to his employer and family situation, not because of his impairments. (R. at 31-52.)

The ALJ found that Gullion had the severe impairments of benign neoplasm of the brain or nervous system and personality disorders, but that these did not meet or equal listed impairments. The ALJ concluded that Gullion could perform a modified range of light work, including several representative jobs that exist in significant numbers in the national economy, and thus was not disabled. Gullion does not contest any particular aspect of the ALJ's decision, but argues that he is disabled and has submitted a letter from a psychiatrist stating that Gullion has been treated for Major Depressive Disorder, Recurrent type, moderate since June 15, 2010, and is prescribed Lamictal. The letter, signed by Marilou V. Inocalla, M.D., also states an opinion that Gullion is unable to maintain gainful employment.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

I have reviewed the record evidence and conclude that the ALJ's decision is supported by substantial evidence. Gullion stopped working for reasons unrelated to his impairments, never had any problems caused by his mental impairments while he was working, and was capable of caring for himself and his children and performing a variety of daily activities despite his impairments. The objective medical evidence that relates to the relevant time period does not indicate that Gullion's impairments are so severe as to preclude employment.

Evidence outside the administrative record that has been submitted for the first time to the district court may only be used to evaluate whether the case should be remanded to the Commissioner. *See* 42 U.S.C.A. § 405(g) (West 2011). It may not be used to reverse the decision of the Commissioner. Accordingly, I may only consider the letter from Dr. Inocalla submitted by Gullion in support of his Motion for Summary Judgment to determine whether a remand is appropriate in this case. "A remand on the basis of new evidence is warranted only if the new evidence is material and there is good cause for its late submission." *Hayes v. Astrue,* 488 F. Supp. 2d 560, 564 (W.D. Va. 2007). There is no requirement that

the new evidence existed during the period on or before the date of the Commissioner's decision. *See Reichard v. Barnhart,* 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y, Dep't of Health & Human Servs.,,* 953 F.2d 93, 96 (4th Cir. 1991).

According to the letter, Dr. Inocalla had begun treating Gullion several months before the ALJ issued his decision, yet Gullion has offered no reason for the late submission of this evidence. Moreover, Dr. Inocalla provides no explanation of her conclusion that Gullion cannot sustain gainful employment, instead simply stating that he has been diagnosed with depression and is taking medication. Because this new evidence is immaterial and Gullion has not shown good cause for its late submission, I find that a remand is not warranted.

Based on my review of the record, I conclude that the ALJ's decision was supported by substantial evidence, and it will be affirmed.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: September 20, 2013

/s/ James P. Jones
United States District Judge